[Doc. No. 84]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| FRANCIENNA B. GRANT, | |
| Plaintiff, | |
| v. | Civil No. 08-306 (RMB/AMD) |
| OMNI HEALTH CARE SYSTEMS OF NJ, INC., ADVANTAGE REHABILITATION, LLC, and RONILDA PULIDO | **OPINION** |
| Defendants. | |

APPEARANCES:

Marshall L. Williams
Marshall Williams, P.C.
1201 Sansom Street, 3rd Floor
Philadelphia, PA 19107
    Attorney for Plaintiff

Elena Ben-Dov, Esq.
Peckar & Abramson
70 Grand Avenue
River Edge, NJ 07661
    Attorney for Defendants

**BUMB,** United States District Judge:

## I.  INTRODUCTION

This matter comes before the Court upon a motion by Defendants for an "Order to Show Cause to Compel Discovery, Award Sanctions, Preclude Evidence, and Dismiss Claims for Failure to Prosecute." [Dkt. No. 84].  From the beginning, this case has

1

been plagued with discovery disputes and delays, but more significantly, misconduct by Plaintiff's counsel, Marshall Williams.  To give proper context to the pending motion for relief, the Court herein undertakes the arduous task of setting forth the lengthy, painful history of this case.

**II.  Background**

Plaintiff filed the Complaint in this case on January 16, 2008; however, summonses were not issued until four months later, in May of 2008.  Defendants timely filed their answer, including two counterclaims, on June 17, 2008.  **Plaintiff, however, failed to file a timely answer to the counterclaims and, instead, filed a motion to dismiss the counterclaims on August 25, 2008, two weeks after the deadline.**  [Dkt. No. 15].

Prior to the filing of Plaintiff's motion to dismiss, on August 13, 2008, Magistrate Judge Donio issued a Scheduling Order which required that Fed. R. Civ. P. 26(a) initial disclosures be made by August 29, 2008, and that all factual discovery be completed by February 27, 2009.  [Dkt. No. 13].

On October 22, 2008, counsel for Defendants, Elana Ben-Dov, filed a letter addressed to Judge Donio explaining that although Defendants had timely served their initial disclosures in accordance with the Court's Scheduling Order, Plaintiff had failed to do so as of October 22, 2008 nearly two months after

2

the Court's deadline.  (Ben-Dov Letter, dated Oct. 22, 2008 [Dkt. No. 19]).  She further explained that she had reached out to Plaintiff's counsel, Mr. Williams, on four separate occasions in a good-faith effort to resolve this issue.  Her attempts were to no avail, however, as Mr. Williams continued to come up with excuses for why he had not served his initial disclosures, including his alleged understanding that they were not yet due (despite the clarity of the Court's Scheduling Order). Additionally, in her letter, Ms. Ben-Dov stated that Mr. Williams was refusing to communicate with her by email and would only accept "written communications from [her] by first class mail or facsimile... ."  (Id. at 3).  She requested that the Court "direct plaintiff's counsel to withdraw this artificial barrier, to cooperate as an officer of the Court and a member of the bar, and to accept and respond to electronic communications just as he would with any communication written on paper."  (Id.).

In response, on November 17, 2008, Mr. Williams filed three submissions with the Court:  a certification that he had served his initial disclosures on November 14, 2008 [Dkt. No. 20], a certification that he had served Plaintiff's interrogatories on November 14, 2008 [Dkt. No. 21], and a copy of a letter he had sent to Ms. Ben-Dov, dated November 5, 2008, apologizing for his inaccessibility.  In his letter, Mr. Williams also objected to Ms. Ben-Dov's prior letter, saying "[n]ot surprisingly, its

contents are filled with clever recreations of facts, speculation
and gross inaccuracies <u>to which the like of an adolescent novel
is necessary to fully respond</u>." (Pl. Letter, dated Nov. 5, 2008
[Dkt. No. 22]) (emphasis added).

On January 8, 2009, the parties appeared before this Court

Judge Donio held a telephonic conference later that same day
(November 17, 2008) to resolve the discovery issues.  As
discussed during the conference, the initial disclosures
Plaintiff had served (**two and one-half months late**) were
inadequate.  Accordingly, Judge Donio issued a second Scheduling
Order immediately after the conference, ordering Plaintiff to
serve a computation of damages (as required by Rule 26(a)) by
November 26, 2008, as well as a revised mandatory disclosure
regarding all information Plaintiff intended to use to support
her claims by December 3, 2008.  (Scheduling Order, dated
November 17, 2008 [Dkt. No. 25]).  The Order further required
Plaintiff to serve responses to Defendants' discovery requests
(previously filed on October 14, 2008) by December 17, 2008, and
to file a motion to amend no later than November 26, 2008.
(<u>Id.</u>).  Notably, the Order stated in bold capital letters, "**THE
FAILURE OF A PARTY OR ATTORNEY TO OBEY THIS ORDER MAY RESULT IN
IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f)**." (<u>Id.</u>).

On January 8, 2009, the parties appeared before this Court
to address Plaintiff's motion to dismiss the counterclaims as
well as Defendants' pending motion to consolidate this matter

4

(08-306) and a related matter that had been filed in state court and removed to federal court (08-3093).[1]  Mr. Williams showed up late to the hearing and then argued with the Court about whether or not courtesy and professionalism required him to inform his adversary in the state court matter that he had also filed a federal complaint.  (Hearing Tr., Jan. 8, 2009, at 2-11).  The Court expressed utter amazement that Mr. Williams had previously appeared in state court with Plaintiff and Defendants' counsel, - the same counsel here - and not even mentioned that he had filed this federal complaint.  Clearly, Mr. Williams intended to keep the filing a secret from Defendants until the summons was issued, four months later.  This type of conduct was unprofessional and discourteous.

The Court also noted that Mr. Williams was late in filing his papers regarding the motion for consolidation.  Mr. Williams apologized and promised that "[i]t will not happen again."  (Id. at 14:6-7).  The Court warned Mr. Williams that "[i]f there is

---

[1]  The state court case was originally filed in August, 2006, and removed to federal court in June, 2008, and Mr. Williams entered his appearance on behalf of Plaintiff in October, 2008.  However, in early 2008, before the case was removed, Mr. Williams made a limited appearance in state court to represent Plaintiff on a pending motion to withdraw and a request for additional discovery time.  (Hearing Tr., Jan. 8, 2009, at 5:13-15).  At the time he made that limited appearance in the state case, Mr. Williams had already filed the federal complaint.  (Docket No. 08-306).  Despite this fact, however, Mr. Williams failed to advise his adversary in the state court matter, Ms. Ben-Dov, that he had filed this federal complaint.

any other further filings that are late, I'm going to deal with them in terms of sanctions because this case has just been in my opinion very sloppily done." (Id. at 14:9-12).  The Court ultimately remanded the state case to state court, denied Defendants' motion to consolidate as moot, and denied Plaintiff's motion to dismiss the counterclaims.  [Dkt. No. 32].

The Court then addressed Mr. Williams' complete failure to comply with Judge Donio's Scheduling Order regarding discovery deadlines and warned him not to miss any more deadlines. (Hearing Tr., Jan. 8, 2009, at 34:11-14).

Five days later, on January 13, 2009, Ms. Ben-Dov filed yet another letter addressed to Judge Donio, explaining that Plaintiff had still not served a computation of damages, revised his initial disclosures, nor responded to Defendants' discovery requests, as required by the Scheduling Order, dated November 17, 2008 [Dkt. No. 25].  (Ben-Dov Letter, dated Jan. 13, 2009 [Dkt. No. 33] at 2).  At that point, Plaintiff's completed initial disclosures were **four and a half months overdue** beyond Judge Donio's already extended deadline and her responses to Defendants' interrogatories and requests for documents were almost **two months overdue**.  (Id.).  On February 8, 2009, Plaintiff inexplicably filed nine certificates of service, six of which attested to Mr. Williams' service of various discovery responses and requests between November 14, 2008 and February 7,

2009.  [Dkt. Nos. 39-44].

On February 18, 2009, Judge Donio issued an Amended Scheduling Order, postponing the prior deadlines as follows: Plaintiff's deadline to serve a computation of damages (as required by Rule 26(a)) was again extended from November 26, 2008 to February 25, 2009; Plaintiff's deadline to serve revised mandatory disclosures regarding all information Plaintiff intended to use to support her claims was again extended from December 3, 2008 to February 25, 2009; the deadline for factual discovery was again extended from February 27, 2009 to March 31, 2009.  (Amended Scheduling Order, dated February 18, 2009 [Dkt. No. 50]).  Once again, Judge Donio's Order stated in bold capital letters, "**THE FAILURE OF A PARTY OR ATTORNEY TO OBEY THIS ORDER MAY RESULT IN IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f)**."  (Id.).  Mr. Williams finally served his revised disclosures with a computation of damages on February 25, 2009**.**  (Ben-Dov Decl., dated Aug. 13, 2009 [Dkt. No. 84-1], at ¶ 29).

Meanwhile, on February 6, 2009, presumably in response to this Court's inquiry whether or not the New Jersey Entire Controversy Doctrine barred Plaintiff's federal suit, Defendants filed a motion for summary judgment.  [Dkt. No. 37].  Plaintiff's opposition was due on February 17, 2009.  **On February 14, 2009, Mr. Williams improperly filed a request for a fourteen-day extension.  [Dkt. No. 49].  Although he was notified the very**

7

**same day by the Clerk of the Court that he needed to refile his request for an extension, Mr. Williams failed to do so until February 27, 2009, nearly two weeks later (and ten days beyond his opposition deadline).[2] [Dkt. 51].** Notwithstanding this issue and granting Plaintiff the benefit of a fourteen-day extension, Plaintiff's opposition was now due on March 2, 2009. At approximately 5:30 p.m. on March 2, 2009, Mr. Williams filed another request for an extension, this time blaming the weather.[3] (Pl. Letter, dated March 2, 2009 [Dkt. No. 53]).  Specifically, he stated, "[t]he inclimate [sic] weather that paralyzed much of the Philadelphia Region caused businesses from which word processing, scanning, copying and binding the said responses to

---

[2]   Local R. 7.1 provides that in order to obtain an automatic fourteen-day extension of a dispositive motion, a party must file a letter invoking such privilege "before the date on which opposition papers would otherwise be due... ." Accordingly, after Mr. Williams missed the February 17, 2009 deadline, the automatic extension under Rule 7.1 was no longer available to him.

[3]   The Court must note that Mr. Williams appears to have conveniently confused the motion day with the deadline for his opposition.  In his March 2, 2009 letter to the Court, Mr. Williams inaccurately stated that his opposition to a pending motion for attorney lien was due on March 2, 2009 but that his opposition to Defendants' summary judgment motion was not due until March 17, 2009.  (Williams Letter, dated March 2, 2009 [Dkt. No. 53], at ¶ 3).  Both motions were given the same motion day – March 2, 2009.  Pursuant to Local R. 7.1(d)(2), a plaintiff's opposition to a motion is due two weeks before the motion day.  Granting Plaintiff the benefit of a fourteen-day extension (despite the untimely request), the motion day for both the attorney lien motion and the summary judgment motion would have been March 17, 2009, making her opposition for BOTH motions due on March 2, 2009.

either close early and/or not to be open on Sunday and Monday, March 1 and 2, 2009." (Id. at ¶ 4). Nevertheless, on March 10, 2009, this Court granted Mr. Williams an extension of time and ordered him to file his opposition by March 18, 2009. Mr. Williams finally did file his opposition to Defendants' motion for summary judgment on March 18, 2009.[4] [Dkt. No. 59]. **On that same date, he also filed a motion to amend the complaint, almost four months after the deadline set by the November 17, 2008 Scheduling Order [Dkt. No. 25].**

On March 24, 2009, the parties appeared before this Court on the pending motion for summary judgment. After some discussion (which, notably, Plaintiff's counsel played no role in), the Court denied Defendant's motion, holding that, under the law in the Third Circuit, Plaintiff was allowed to bring parallel proceedings. The Court then addressed some logistical issues, noting that "[i]t doesn't seem like there has been a whole lot of communication in this case. I'm displeased with the conduct of counsel in this case." (Hearing Tr., Mar. 24, 2009, at 10:4-5). Then, the Court addressed Plaintiff's recently filed motion to amend the complaint to add claims of retaliation based on Defendants having filed counterclaims. When the Court asked Mr.

---

[4] The Court notes that although Plaintiff's opposition to the motion for attorney lien was due on March 2, 2009 (as no extension was ever granted), Mr. Williams did not file such opposition until March 22, 2009, **three weeks late**. [Dkt. No. 63].

Williams what his evidentiary basis was for making such allegations, Mr. Williams had no answer.  The Court found Mr. Williams' conduct "questionable," noting that it could "see no other reason why [Mr. Williams] ha[d] attempted to assert this new amendment other than for purposes of harassment and other improper purposes."  (Id. at 18:20-23).  Thus, the Court issued an order to show cause under Rule 11 as to why sanctions should not be imposed on account of Mr. Williams' attempt to add allegations with no support.[5]  Mr. Williams was ordered to respond no later than April 10, 2009.  [Dkt. No. 64].

Finally, at the end of the hearing, the Court ordered the parties to confer concerning discovery dates.  Within minutes of leaving the courtroom, the Court's deputy clerk advised the Court that Ms. Ben-Dov had requested the Court to return to the courtroom.  The Court did so and learned that Mr. Williams had refused to discuss discovery with Ms. Ben-Dov, instead insisting that they discuss settlement.  (Hearing Tr., Mar. 24, 2009, at

---

[5] Fed. R. Civ. P. 11(b) states, in relevant part, that in filing a pleading, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; ... ."

21:8-9).  It was clear to this Court that the parties could not reach agreement on even the most trivial of discovery issues, and Mr. Williams gave this Court no alternative but to order the parties to go to Judge Donio's courtroom to sort out all the discovery disputes.  Judge Donio issued yet another Amended Scheduling Order, ordering, _inter alia_, Plaintiff to respond to Defendants' interrogatories more fully by April 2, 2009, and extending the deadline for factual discovery yet another two months (from March 31 to May 29, 2009).  (Amended Scheduling Order, dated March 24, 2009 [Dkt. No. 66]).  Once again, Judge Donio's Order stated in bold capital letters, "**THE FAILURE OF A PARTY OR ATTORNEY TO OBEY THIS ORDER MAY RESULT IN IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f).**"  (_Id._).

On April 3, 2009, **one day after Judge Donio's further-extended deadline**, Mr. Williams apparently faxed defense counsel a letter dated[6] April 2, 2009, "stating that he was still waiting for a few documents from plaintiff and that he expected to be able to 'appropriately respond' by April 10, 2009."  (Ben-Dov Decl., dated Aug. 13, 2009 [Dkt. No. 84-2], at ¶ 32 (quoting Letter from Mr. Williams, attached as Ex. 21)).  However, Ms. Ben-Dov never received the responses as Mr. Williams had promised.  (_Id._).

---

[6]  As the record shows, Mr. Williams has a habit of backdating correspondence.

Turning back to the Court's previously issued Order to Show Cause, Mr. Williams was due to respond by April 10, 2009.  On April 11, 2009, **again, one day after the deadline**, Mr. Williams filed a request for an extension of time in which to file his response.  [Dkt. No. 71].  **Although his request was never granted, Mr. Williams filed his response two weeks later, on April 25, 2009.  [Dkt. No. 72].**  Concerned that this case had delayed too long, the Court set up a telephone conference for June 24, 2009, to rule on the Order to Show Cause.  During the conference, the Court first noted the tardiness of both Mr. Williams' request for an extension and his response, as well as the fact that the case law he had cited did not stand for the proposition for which he had cited it.  (Telephone Conf. Tr., June 24, 2009, at 2-3).  However, based on its own legal research, the Court found that the proposed new claim was permissible at that time and, thus, the Court declined to impose sanctions on Mr. Williams.  Nonetheless, the Court clearly warned Mr. Williams that, "if at the end of this litigation or at any point during this litigation I find that the retaliation claim lacked a good faith basis and was filed in bad faith, I will not hesitate to impose sanctions on Mr. Williams." (Id. at 4:3-6; see also 4:25-5:2; 5:13-17).

In the meantime, Judge Donio had issued yet another Scheduling Order, extending, inter alia, the deadline for factual

discovery to August 17, 2009, and scheduling a settlement
conference for June 29, 2009.  (Amended Scheduling Order, dated
June 16, 2009 [Dkt. No. 77]).  Apparently, Mr. Williams had
failed to submit a settlement memorandum in compliance with Judge
Donio's Order, which he subsequently blamed on his client's
refusal to participate.  During the June 24, 2009, telephone
conference with this Court, it became quite clear that
Plaintiff's counsel was attempting to duck Judge Donio's
settlement conference scheduled for the next week.  Thus, the
Court ordered that "[Plaintiff, Ms. Grant] appear next week for a
settlement conference <u>in front of me</u> and if she fails to show,
I'll dismiss the case." (Telephone Conf. Tr., June 24, 2009, at
7:2-3) (emphasis added).  After addressing Mr. Williams' previous
lack of cooperation with Defendants concerning settlement
discussions, the Court again warned Mr. Williams:

> THE COURT:      Mr. Williams, Mr. Williams.  Mr.
>                 Williams, let me be perfectly candid.  I
>                 don't like how you have conducted
>                 yourself in this matter.  I think this
>                 is gamesmanship and I don't know where
>                 the fault lies but I'm going to get to
>                 the bottom of it.  I don't know if it's
>                 you, I don't know if it's your client –
>
> MR. WILLIAMS:   I –
>
> THE COURT:      Don't speak.  I am speaking and I am not
>                 through.  I am going to order that you
>                 appear and that your client appear, that
>                 Ms. Ben-Dov appear and that her client
>                 appear.  And if the plaintiff fails to
>                 show, I'll dismiss the case.  Now, pull
>                 out your calendars.  I'm putting you on

hold while I check my calendar.

(BRIEF PAUSE)

THE COURT:        July 1st at 2 o'clock.

MR. WILLIAMS:     Judge, July 1st at 2 o'clock?

THE COURT:        Yes.

MR. WILLIAMS:     Can we – may I – may I respectfully
                  request that it be after the holiday?  I
                  expect to be out of town up until – up
                  until the holiday [after Judge Donio's
                  scheduled date for the settlement
                  conference].

THE COURT:        Where were you going to be the 29th [the
                  date Judge Donio had scheduled for the
                  settlement conference]?

MR. WILLIAMS:     I expected to be here, Judge, on the
                  29th.

THE COURT:        Okay, June 29th at 1:30.

MS. BEN-DOV:      At what time, your Honor?

THE COURT:        1:30, the time that was originally
                  scheduled in front of Judge Donio.  So
                  your calendar should be clear.  If the
                  case doesn't settle beforehand, I expect
                  you to be there.  I expect Ms. Grant to
                  be there, I expect anyone with
                  settlement authority on behalf of the
                  defendant to be there.  And, Mr.
                  Williams, you are on notice, if she
                  fails to show, I will dismiss the case.

MR. WILLIAMS:     Yes, your Honor.

THE COURT:        I am tired of this conduct.  It has been
                  inexcusable.  And you have been
                  forewarned.  ...

(Id. at 9:24-11:10).

This Court also issued a Letter Order later that same day,

14

which ordered, in particular, the parties to submit settlement memoranda to the Court as follows:

> Counsel for each party shall submit a letter memorandum to the Court no later than **4:00 p.m. on Friday, June 26, 2009,** which includes a brief statement of the legal basis for the party's claims or defenses, the status of discovery, and the party's settlement position. The letter memorandum may be submitted <u>ex</u> <u>parte</u>. **This letter memorandum may NOT be faxed to Chambers; rather, it should be mailed, hand delivered, or filed <u>under seal</u> on ECF. Failure to submit this letter on time will result in sanctions against counsel.**

(Letter Order, dated June 24, 2009 [Dkt. No. 79]).

On June 29, 2009, this Court held the scheduled settlement conference. **Although Defendants complied with the terms of the Letter Order, Mr. Williams failed to do so. Instead of submitting his settlement memorandum to this Court on time using one of the permissible ways listed, he faxed his submission to Judge Donio's Chambers.** Consequently, this Court did not receive his memorandum in advance of the conference. At the start of the settlement conference, the Court had the following colloquy with Mr. Williams concerning his failure to follow directions:

> THE COURT:          So, Mr. Williams, is there some reason why you didn't comply with the terms of the order?
>
> MR. WILLIAMS:    Your honor, respectfully, it was my understanding from what I believed to be a voice mail message that I was to send it to Judge Donio. And we also checked – I believe we checked the docket and I faxed to Judge Donio the package.
>
> THE COURT:          Are you telling me that my Deputy Clerk

15

```
                            left you a message telling you to fax
                            this to Judge Donio's chambers?  Is that
                            what you are telling me?

MR. WILLIAMS:   No, your honor.

THE COURT:      What are you telling me?

MR. WILLIAMS:   I'm saying your Honor that it was my
                understanding that Judge Donio would be
                holding the conference as previously
                scheduled and that my settlement package
                was to be faxed to her, which I did.

THE COURT:      Where did you get that understanding?

MR. WILLIAMS:   I got that understanding, Judge, from
                what I thought happened at the
                settlement conference at the status
                conference and also –

THE COURT:      What status?  Wait a minute.  What
                status conference are you referring to?

MR. WILLIAMS:   The one that was conducted by your Honor
                last week on –

THE COURT:      On the telephone?

MR. WILLIAMS:   Yes.  I believe the 25th of June.

THE COURT:      When I indicated that the parties were
                to appear in front of me today at 1:30.
                Me.

MR. WILLIAMS:   Judge, it is my understanding, again I
                may be mistaken, but –

THE COURT:      You are mistaken and I want to know why
                you are mistaken because this is the – I
                don't know how many times, Mr. Williams,
                but you seem to have a problem complying
                with this Court's Order and I'm getting
                to the bottom of it.  I want to know
                now why it is that you didn't comply with my
                order and I'm waiting for an
                explanation.
...
```

MR. WILLIAMS:     Your Honor, I – I – it was my belief
                  that I was to fax them to Judge Donio.
                  I did not have an opportunity to review
                  the Court's letter – I believe the
                  letter order.  So I faxed them to Judge
                  Donio thinking that she as the
                  Magistrate Judge would be holding the
                  settlement conference as previously
                  ordered by – by her.

THE COURT:        Mr. Williams, you can look at me with a
                  straight face and make that
                  representation?  We had a telephone
                  conference on the record ... when I
                  specifically had this conversation with
                  you and Ms. Ben-Dov and we discussed
                  Monday's proceeding and I ordered the
                  parties to appear in front of me.  I
                  indicated to you that if the parties
                  didn't show up, the case would be
                  dismissed.  I indicated to you that I
                  have had it with your conduct in this
                  case.  And I submitted this letter order
                  and the letter order could not be
                  clearer.  ...

...

THE COURT:        I don't know what to say, Mr. Williams.
                  I really – someday some court might be
                  looking at the record so I cannot be any
                  clearer on this record that there have
                  been so many numerous instances of
                  unprofessionalism, of missed deadlines,
                  of flagrant disregard of this Court's
                  Orders that I can't begin to count them.
                  And at some point – I don't know what
                  the answer is going to be.  My letter
                  order was quite clear that if I didn't
                  get the submission on time that I would
                  impose sanctions, and I'm contemplating
                  that.  But I then received from Judge
                  Donio this submission that I don't know
                  when it was faxed to her on June 26th,
                  so it didn't comply with my order.  But
                  it certainly gives you plausible
                  deniability because you sent it to Judge
                  Donio.

17

(Hearing Tr., June 29, 2009, at 2:23-7:15).

Beyond Mr. Williams' failure to follow the Court's explicit instructions in submitting his memorandum, the memorandum itself was "useless" as it did not contain current information regarding Plaintiff's employment and finances.  (Id. at 7:18; 13:3-4). Thus, the Court had to spend extra time and effort to elicit the necessary information orally from Mr. Williams and his client during the settlement conference.  Eventually, it became clear that the case was not close to settling and the Court turned to the outstanding discovery disputes.  The Court learned that Mr. Williams had still not provided Defendants with a calculation of damages, the requisite Rule 26(a) disclosures, nor responses to all of Defendants' interrogatories.  After significant discussion regarding former deadlines and Mr. Williams' inability to comply with Judge Donio's prior Scheduling Orders, the Court decided to "start over":

> THE COURT:     All right, we're going to start over.
> And I recognize that the defendants once
> again have attempted to comply with the
> court order.  Mr. Williams, this is
> really the last chance.  I'm just beside
> myself.  By August 1, 2009, I want the
> plaintiff to turn over the calculation
> of damages, all documents under Rule 26
> disclosures and all answers to
> interrogatories that have not yet been
> provided.
>
> ...
>
> THE COURT:     There will be no further extensions.  If

18

> these aren't turned over, I'll consider
> an application to dismiss the complaint,
> if they're not turned over by August
> 1st, because I think you've had plenty
> of opportunity to do that.

(Id. at 22:9-24).  The Court further ordered that all depositions
be completed by August 30, 2009 and that the parties schedule the
specific dates and times before they left the courthouse.  (Id.
at 23:25-24:1; 25:11-12; 28:8-9).  However, not surprisingly, the
parties were unable to agree on the particular dates and times
for the depositions.  Within minutes of leaving the courtroom,
the Court was summoned to return.  The Court thereafter ordered
that the three depositions of the Defendants take place on August
18 and 19, 2009, at defense counsel's offices in River Edge, New
Jersey, and that the deposition of the Plaintiff take place on
August 24 and 25, 2009, at the Camden Federal Courthouse.
(Amended Scheduling Order, dated July 1, 2009 [Dkt. No. 82]).

On August 13, 2009, Defendants filed the present motion for
an order to show cause to compel discovery, award sanctions,
preclude evidence and dismiss claims for failure to prosecute
pursuant to Rules 26(e), 37(b)(2), 37(c)(1) and 37(d) of the
Federal Rules of Civil Procedure.  [Dkt. No. 84].  In support of
this motion, Ms. Ben-Dov submitted an affidavit explaining that,
as of August 13, 2009, Mr. Williams had still failed to provide
the discovery that the Court had previously ordered him to
provide no later than August 1, 2009.  (Ben-Dov Decl., dated Aug.

19

13, 2009 [Dkt. No. 84-2], at ¶¶ 2, 51).  She further explained
that Mr. Williams' failure to provide the discovery in advance of
the upcoming depositions would severely prejudice Defendants.
(Id. ¶¶ 52, 53).  Significantly, despite Plaintiff's failure to
provide any meaningful discovery responses, on July 31, 2009,
Defendants had served, by Federal Express overnight delivery,
their answers to three sets of Plaintiff's interrogatories and
almost 1,000 pages of documents in response to Plaintiff's
document requests (some of which were duplicative of those
previously produced in Defendants' initial disclosures and in the
state case).  (Id. at ¶ 44).

        Additionally, in her affidavit, Ms. Ben-Dov set forth the
numerous difficulties she had faced in trying to work with Mr.
Williams over the course of the case, including his many failures
to comply with discovery deadlines and court orders (which he
always conveniently blamed on his "understanding" of what was
required), his refusals to communicate with her in a polite and
timely manner, his habit of promising to do something but failing
to follow through, and his generally unprofessional and
uncooperative nature.  For example, on August 7, 2009, as Ms.
Ben-Dov was attempting to communicate with Mr. Williams regarding
the discovery that the Court had previously ordered him to
provide no later than August 1, 2009, Mr. Williams first
responded by saying he was "surprised" that Defendants expected

discovery and then he apparently turned off his fax machine.
(Id. ¶¶ 46-47).  On August 11, 2009, Ms. Ben-Dov's co-counsel,
Mr. Daitz, called Mr. Williams and left him a voicemail message
on his cell phone asking him when he was going to serve
Plaintiff's discovery responses.  (Id. ¶ 48).  In response, on
the following day, August 12, 2009, Mr. Williams faxed Mr. Daitz
a letter (post-dated August 11, 2009) stating,

> It is always delightful to hear from you Mr. Diatz [sic
> Daitz].  However, I am amused that a professional of
> your caliber would leave me a *"Ben Dov Style"* voice
> mail message; and on my personal cellular telephone.
> Since that telephone is used for emergencies only,
> kindly refrain from attempting to make uninvited
> contact with me on 215-[redacted].

> As Ms. Ben Dov [sic, Ben-Dov] knows, I am working very
> diligently to provide both of you with the new updates
> to plaintiff's discovery responses as quickly as
> possible.

> More importantly, I have not received [Defendants']
> responses to plaintiff's discovery requests that were
> due on August 1, 2009 and more than two (2) years ago.
> Please advise me, in writing, by the close of business,
> August 12, 2009, as to when I will receive those
> responses as plaintiff expects to conduct depositions
> of defendants next week.

(Williams Letter, dated Aug. 11, 2009 (attached as Ex. 33 to Ben-
Dov Decl., dated Aug. 13, 2009) [Dkt. No. 84-34]).  As the
tracking documentation demonstrates, Fed Ex had unsuccessfully
attempted to deliver the documents to Mr. Williams' Philadelphia
office three times.  When Ms. Ben-Dov explained this delivery
problem to Mr. Williams, he responded as follows:

> You might recall that in July 2008, I respectfully

> requested that you do not send mail by FedEx that
> typically does not leave notices of its delivery
> attempts.  I further requested that you send mail by
> the U.S. Postal Service, certified mail, if you prefer.
> I have never had problems receiving certified U.S.
> Mail.  Without waiving any objections, please use that
> mode of delivery in the future.

(Williams Letter, dated Aug. 12, 2009 (attached as Ex. 36 to Ben-Dov Decl., dated Aug. 13, 2009) [Dkt. No. 84-38]).

On August 17, 2009, the day before the depositions of Defendants were scheduled to begin (per Court Order), **in flagrant disregard of the Court's prior Order**, Mr. Williams filed three Notices to Take Depositions of Defendants on August 26, 27, and 28, 2009, thereby attempting to reschedule the depositions unilaterally.  Four hours later, at 12:31 p.m., this Court issued the following text order:

> The Court notes that the Plaintiff has filed three
> Notices to Take Deposition scheduled for August 26, 27,
> and 28, 2009 [Docket Entry 86].  These notices clearly
> VIOLATE the Court's prior Order entered July 1, 2009
> [Docket Entry 82].  IT IS AGAIN ORDERED that the
> depositions of the defendants shall proceed on August
> 18 and 19, 2009, as previously ordered.  Failure by
> Plaintiff's counsel to attend these depositions ON
> THESE DATES will result in sanctions, which may include
> dismissal of the action and attorney's fees.  Signed by
> Judge Renee Marie Bumb on 08/17/09.

(Text Order, dated Aug. 17, 2009, 12:31 p.m.).  Eight hours later, Mr. Williams filed a motion to modify the deposition schedule, complaining that Plaintiff had not received responses to her interrogatories or documents requests and, thus, did not have "a reasonable opportunity to prepare for the said

22

depositions... ." (Pl. Motion to Modify Discovery Order [Dkt.
No. 88]). Within a few hours, the Court issued a second text
order, stating,

> Plaintiff's request, filed at 8:08 p.m., to modify the
> Court's prior orders scheduling the defendants'
> depositions for August 18 and 19, 2009 is DENIED. The
> Court again reminds Plaintiff's counsel that failure to
> attend these depositions will result in the imposition
> of sanctions, which may include dismissal of the action
> and/or the imposition of attorney's fees. The Court
> expects that counsel will attend the depositions at
> their scheduled time and that there will be no delays.
> Signed by Judge Renee Marie Bumb on 08/17/09.

(Text Order, dated Aug. 17, 2009, 10:56 p.m.).

On August 18, 2009, **Mr. Williams failed to appear for either
the morning or afternoon depositions of Defendants scheduled for
that day**. (Celecki Aff., dated Aug. 18, 2009 [Dkt. No. 89];
Daitz Decl., dated Aug. 18, 2009 [Dkt. No. 90]; Pulido Aff.,
dated Aug. 18, 2009 [Dkt. No. 91]; Supp. Daitz Decl., dated Aug.
18, 2009 [Dkt. No. 92]). Later in the day, Mr. Williams and Mr.
Daitz spoke via telephone to discuss the deposition schedule as
well as the fact that Mr. Williams had still not provided the
discovery as previously ordered by the Court. Apparently, Mr.
Williams "refused to tell [Mr. Daitz] when he would provide
plaintiff's responses... ." (Supp. Daitz Decl., dated Aug. 18,
2009 [Dkt. No. 92] at ¶ 3). Moreover, as Mr. Daitz relates, Mr.
Williams threatened Mr. Daitz regarding Defendants' pending
motion for an order to show cause:

> plaintiff's counsel threatened me three (3) times that

>we should "withdraw the order to show cause or else I
>will be forced to file my own motion and it will be
>extremely embarrassing for you" and "it will be bad for
>you" and "you will have to stand in front of her [Ms.
>Ben-Dov] because I am going to go after her."

(Id. at ¶ 5).  Later that night, Mr. Williams filed a letter
addressed to the Court, denying that he had made any such
threats.  (Williams Letter, dated Aug. 18, 2009 [Dkt. No. 93]).[7]

The following day, August 19, 2009, Mr. Williams arrived at
the scheduled deposition almost three hours late, attributing his
tardiness to "all of the road work that is going on in the area,
all of the detours that are in place."  (Third Supp. Daitz Decl.,
dated Aug. 20, 2009 [Dkt. No. 94] at ¶ 9).  At the end of the
deposition, counsel attempted to discuss the outstanding
discovery issues.  Mr. Williams continued to object to
Defendants' use of FedEx to deliver their discovery responses.
He also failed to provide Plaintiff's discovery responses, which
were supposed to have been served by August 1, 2009, but assured
defense counsel that he would serve the responses that night by
overnight delivery.  (Id. at ¶¶ 15-16).  However, Mr. Williams
failed to serve the discovery responses that evening or any time
before the Plaintiff's deposition, scheduled for August 24 and
25, 2009.  (Fourth Supp. Daitz Declaration, dated Aug. 21, 2009

_____

[7] The Court notes that, in his letter, Mr. Williams had the
audacity to complain about defense counsel's having faxed an
emergent request to the Court, "in violation of this Court's
standing order" proscribing faxes, despite his own previous
violation of said policy.

[Dkt. No. 96]).

On August 24, 2009, the first day of Plaintiff's scheduled deposition, Mr. Williams arrived at the deposition over one hour late and without his materials. (Fifth Supp. Daitz Declaration, dated Aug. 26, 2009 [Dkt. No. 97] at ¶ 3). Plaintiff herself arrived on time. (Id. at ¶ 2). On August 25, 2009, the second day of Plaintiff's deposition, Mr. Williams arrived late again. (Id. at ¶ 8). **Towards the end of the deposition on the second day, August 25, 2009, Mr. Williams finally gave defense counsel a packet of incomplete discovery responses that he had apparently been holding in his bag since the morning.** (See id. at ¶ 12). Notwithstanding this fact, on August 27, 2009, Mr. Williams filed two certificates of service stating that he had previously served Plaintiff's responses to Defendants' discovery requests on August 17 and 19, 2009, a fact that simply was not established by the record. (Cert. of Service, dated Aug. 17, 2009 but filed Aug. 27, 2009 [Dkt. No. 100]; Cert. of Service, dated Aug. 19, 2009 but filed Aug. 27, 2009 [Dkt. No. 101]).

Per the Clerk of the Court's schedule, the motion date for Defendants' pending motion for an order to show cause was set for September 8, 2009, making Mr. Williams' response due by August 24, 2009. **Three days after the deadline, on August 27, 2009, Mr. Williams improperly filed a request for an extension of time pursuant to Local R. 6.1(b), seeking a new opposition deadline of**

September 11, 2009. [Dkt. No. 99].[8]  **Although he was notified the**

**very same day by the clerk of the court that he needed to refile**

**his request for an automatic extension pursuant to Local R. 7.1,**

**Mr. Williams failed to do so.**  Nonetheless, this Court granted

Mr. Williams' request, stating in a text Order,

> Plaintiff's tardy application to file a response to the
> Defendants' Motion [Docket No. 84] for an Order to Show
> Cause and Other Relief is GRANTED and her response
> shall be filed NO LATER THAN SEPTEMBER 11, 2009.
> Signed by Judge Renee Marie Bumb on 09/10/09.

(Text Order, dated September 10, 2009).  **Despite the extension,**

**however, Mr. Williams failed to file any response by September**

**11, 2009.  Instead, on September 15, 2009, four days after the**

**extended deadline, Mr. Williams filed yet another request for an**

**extension of time until September 30, 2009, only this time he**

**sought to invoke an "automatic extension" pursuant to Local R.**

**7.1. [Dkt. No. 106].**  In his request, Mr. Williams bemoaned,

> Defendants' said motion is the most extensive motion of
> its kind that plaintiff has seen and it contains
> voluminous and inaccurate allegations that warrant
> detailed answers.  Counsel for plaintiff has recently
> returned from vacation out of state in southern [sic]
> part of the United States.

(Id.).  Despite the Court having granted more than a two week

extension, Mr. Williams failed to file any opposition.  To date,

---

        [8]  In his request, Mr. Williams inaccurately calculated the
original deadline for his opposition papers as August 28, 2009
instead of August 24, 2009, presumably in an attempt to excuse
his tardy filing of the request for an extension.  (Williams
Extension Letter, dated August 27, 2009 [Dkt. No. 99]).

he has still not filed any opposition.  This Court will not sit around and wait for Mr. Williams to file a response when he feels like filing one.

Beyond his inability to comply with deadlines, Mr. Williams has on several occasions crossed another line through his inappropriate and even offensive conduct.  In his supplemental declaration, Mr. Daitz noted several inappropriate comments that Mr. Williams had previously made to Ms. Ben-Dov:

> The Court should also know at this point that one of the reasons my partner [Ms. Ben-Dov] asked me to get involved in the case with her is that plaintiff's counsel had acted so inappropriately toward her by making completely unprofessional and offensive comments to her after court appearances such as "your face has such a perfect shape" and "what color are your eyes, they sparkle in the sunlight" and "do you want to pick me up in a bar?"  She of course told him that his comments were completely inappropriate, which he denied understanding.  These were not previously brought to the Court's attention because we assumed that he would deny making them, but his misconduct has been ongoing so long and has become more and more egregious, so it is important for the Court to know the full story.

(Second Supp. Daitz Decl. [Dkt. No. 92] at ¶ 8).  These inappropriate comments are consistent with Ms. Ben-Dov's prior complaint about Mr. Williams' inappropriate behavior during the March 23, 2009, hearing on the motion for summary judgment; there, she noted Mr. Williams' comment that he "expressed interest in coming to watch me [Ms. Ben-Dov] at trial[,]" a trial in New York completely unrelated to this case.  (Hearing Tr., March 23, 2009, at 21:24-25).

27

## III.   Standard of Review

Defendants filed the present motion for an order to show cause to compel discovery, award sanctions against Plaintiff and/or Plaintiff's counsel, preclude evidence and dismiss claims for failure to prosecute pursuant to Rules 26(e), 37(b)(2), 37(c)(1) and 37(d) of the Federal Rules of Civil Procedure. (Ben-Dov Decl., dated Aug. 13, 2009 [Dkt. No. 84-2], at ¶ 3).

The Federal Rules of Civil Procedure permit the imposition of many different types of sanctions based on a variety of discovery misconduct. <u>See</u> Fed. R. Civ. P. 16(f), 37, and 41. Although some of the sanctions provisions apply only to a party itself, <u>see</u> <u>Grider v. Keystone Health Plan Central, Inc.</u>, 2009 WL 2750450, at *17 (3d Cir. Sept. 1, 2009) (holding that Rule 37 does not permit sanctions against counsel), Rule 16(f) allows a court to impose sanctions based upon the misconduct of either a party or its attorney.  Although Defendants did not explicitly seek sanctions pursuant to Rule 16(f), the Court finds this rule overwhelmingly applicable in this case and, pursuant to the rule itself, the Court need not rely on a motion by Defendants to impose the sanctions set forth in this rule.

Specifically, Rule 16(f)(1) provides,

[o]n a motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(ii)-(vii), if a party or its attorney:

(A)  fails to appear at a scheduling or other pretrial conference;

28

(B)   is substantially unprepared to participate –
      or does not participate in good faith – in
      the conference; or

(C)   fails to obey a scheduling or other pretrial
      order.

Fed. R. Civ. P. 16(f)(1) (emphasis added).   The sanctions

authorized under Rule 37(b)(2)(ii)-(vii) include "striking

pleadings in whole or in part" and "dismissing the action or

proceeding in whole or in part[.]"   Moreover, under Rule

16(f)(2),

> [i]nstead of or in addition to any other sanction, the
> court must order the party, its attorney, or both to
> pay the reasonable expenses – including attorney's fees
> – incurred because of any noncompliance with this rule,
> unless the noncompliance was substantially justified or
> other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2) (emphasis added).

In determining whether the "drastic" sanction of dismissal

is appropriate, the Court must consider the following factors:

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the
> failure to meet scheduling orders and respond to
> discovery; (3) a history of dilatoriness; (4) whether
> the conduct of the party or the attorney was willful or
> in bad faith; (5) the effectiveness of sanctions other
> than dismissal, which entails an analysis of
> alternative sanctions; and (6) the meritoriousness of
> the claim or defense.

Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863,

867-868 (3d Cir. 1984) (emphasis omitted).   "While the

appropriateness of dismissal is not contingent upon the

satisfaction of all six factors in a given case, 'the resolution

29

of any doubts [must be] in favor of adjudication on the merits.'"
Bowers v. National Collegiate Athletic Ass'n, 564 F. Supp. 2d
322, 334 (D.N.J. 2008) (quoting $8,221,877.16 in U.S. Currency,
330 F.3d 141, 162 (3d Cir. 2003).  The Court will address each
factor in turn.


IV.  **Analysis**

   A.  **Poulis Factors**

   **(1) Extent of the Party's Personal Responsibility**

   As the Third Circuit explained in Poulis, a party's "lack of
responsibility for [her] counsel's dilatory conduct is not
dispositive, because a client cannot always avoid the
consequences of the acts or omissions of its counsel."  Poulis,
747 F.2d at 868.  However, "the Court of Appeals has
'increasingly emphasized visiting sanctions directly on the
delinquent lawyer, rather than on a client who is not actually at
fault.'"  Bowers, 564 F. Supp. 2d at 334 (quoting Adams v.
Trustees of New Jersey Brewery Employees' Pension Trust Fund, 29
F.3d 863, 873 (3d Cir. 1994)).

   In this case, it is unclear to what extent Plaintiff herself
is to blame for the delays in responding to discovery requests
and failures to follow Court Orders.  There are some instances
that suggest Plaintiff may have been involved in dilatory and
other improper tactics.  For example, the record shows that

30

Plaintiff disclosed her worker's compensation claim for the first time at her deposition in late August 2009, despite the opportunity to do so in her February 2009 written responses. (Fifth Supp. Daitz Decl. [Dkt. No. 97] at ¶ 6).  Similarly, in her January 2007 and February 2009 interrogatory answers, Plaintiff stated that she did not have any health providers, yet her counsel informed the Court at the June 29, 2009 conference that Plaintiff had treated with a psychotherapist.  (Id. at ¶ 10).  At her deposition, she insisted that "she could not recall the name, address, or even rough time frames of treatment from a psychotherapist that she testified she may have seen between one (1) and nine (9) times for treatment for alleged emotional distress" and that she would have to check her records at home, which she has never produced.  (Id.).  Finally, in a letter to defense counsel regarding, inter alia, settlement discussions, Mr. Williams attributed the following quote to Plaintiff:  "she 'still hate[s] Pulido, Lincoln and Advantage in the worst way.  I want to see them #*^%# in court.'"  (Williams Letter, dated Jan. 28, 2009, attached to Fifth Supp. Daitz Decl. as Ex. 46 [Dkt. No. 97-2]).  The Court finds Plaintiff's expressed hostility unnecessary and unproductive.

Despite these actions, the Court recognizes that Plaintiff appeared in Court for the settlement conference when so ordered by the Court and that she also appeared on time for her Court-

scheduled depositions.  This demonstrates some attempt on the part of Plaintiff herself to abide by this Court's Orders.

However, the Court is also mindful of the fact that Plaintiff was present during the June 29, 2009 settlement conference, during which the Court made clear that Mr. Williams had consistently failed to comply with the discovery requests and Court Orders in this case.  Accordingly, Plaintiff was put on notice of her counsel's pattern of deficiency and cannot claim to be an "unknowing client abandoned by [her] attorney."  <u>Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 692 (3d Cir. 1988) (finding that plaintiff and his counsel shared responsibility for repeated deposition abuses and discovery compliance failures); <u>see also</u> <u>Ennis v. New Jersey Bell Telephone Co.</u>, 782 F.2d 396, 397 (3d Cir. 1985) (holding that plaintiff "assumed a personal responsibility" where she insisted on maintaining her counsel despite the court having warned her, on two occasions, of her counsel's deficiencies); <u>Greene v. London Harness & Cable Corp.</u>, 2000 WL 1868380, at *3 (E.D. Pa. Dec. 21, 2000) ("Because [plaintiff] was on notice of the deficiencies of <u>[Marshall] Williams</u> in prosecuting this matter, his personal culpability exceeds that of an uninformed client that merely suffers responsibility for the shortcomings of an attorney.") (emphasis added).

On balance, the Court finds that this factor weighs in favor

of dismissal.

**(2) Prejudice to the Adversary**

As defense counsel set forth in their most recent letter to the Court, Mr. Williams, despite plenty of opportunity, has failed to provide the following:

- a copy of the letter Mr. Williams claimed to have written to defense counsel on May 22, 2009;

- supplemental answers to Defendants' First Interrogatory Nos. 1, 2, 3, and 4;

- supplemental responses to Defendants' First Document Request Nos. 1, 2, 3, 5, 6, 7, 8, 32, 35, 38 and 39;

- answers to Defendants' Second Set of Interrogatories (contrary to Mr. Williams' Certificate of Service [Dkt. No. 101]);

- responses to Defendants' Second Request for Documents;

- documents Mr. Williams requested from his own client during her deposition on August 24 and 25, 2009;

- name and address of the psychotherapist that has allegedly treated Plaintiff; and

- response to Defendants' proposed Confidentiality Agreement and Protective Order (which Defendants gave Mr. Williams on July 23, 2009).

(Ben-Dov Letter, dated Sept. 16, 2009 [Dkt. No. 107]).

Mr. Williams' failure to meet scheduling orders and respond to Defendants' discovery requests has caused Defendants significant prejudice. Indeed, Defendants were forced to take Plaintiff's deposition without the benefit of Plaintiff's relevant discovery responses. Moreover, Plaintiff has not even identified, much less produced, any documents from her alleged

33

health care providers treating her for alleged emotional
distress.  (Fourth Supp. Daitz Decl. [Dkt. No. 96] at ¶ 6).
Without this crucial information, Defendants are not able to
build their defense.

      Additionally, Defendants have been forced to expend
substantial time, effort, and costs to send letters and file
motions to compel Plaintiff and her counsel to comply with the
Court's Orders.  <u>See</u> <u>Curtis T. Bedwell and Sons, Inc. v. Int'l</u>
<u>Fidelity Ins. Co.</u>, 843 F.2d 683, 693 (3d Cir. 1988) (affirming
district court's sanction of dismissal where defendants were
forced to expend significant costs to compel plaintiff to comply
with discovery requests).  Defense counsel have also been forced
to make numerous appearances on account of Mr. Williams' failures
to abide by the scheduling orders issued in this case.  The Court
finds that the prejudice Defendants have suffered is significant.

      **(3) History of Dilatoriness**

      In this case, it is undeniable that there has been a pattern
of dilatoriness on Mr. Williams' part.  He has missed countless
discovery deadlines by months, and he has been late in filing
virtually all of his submissions with the Court.[9]  Even his

---

      [9]  Despite his pattern of late filings, the Court notes that
Mr. Williams did manage to file one timely motion in the related
matter (Case No. 08-3093) – a motion for attorney fees.  The
docket in that case shows that a mere two weeks after the Court
remanded the case to state court, Mr. Williams filed a motion for
attorney fees for his work on the removal/remand/consolidation
issue.  The Court immediately rejected the application because it

requests for extensions have been consistently untimely.  As the

Third Circuit has explained,

> [t]ime limits imposed by the rules and the court serve
> an important purpose for the expeditious processing of
> litigation.  If compliance is not feasible, a timely
> request for an extension should be made to the court.
> A history by counsel of ignoring these time limits is
> intolerable.

<u>Poulis</u>, 747 F.2d at 868.

In this Court's view, the record cannot be any clearer that

Mr. Williams has devoted very little time to the substance of

this case.  Rather than working to file relevant papers on time

and serve complete discovery responses in compliance with the

many scheduling orders, he has chosen to waste what little time

he has spent in this case on things like fabricating excuses for

his unprofessional conduct and crafting tart responses to defense

counsel, which do not impress this Court.  His oral and written

responses, as documented in the record, are consistently

unproductive, inaccurate, obnoxious and inappropriate.  They

serve no purpose other than to annoy defense counsel, showcase

Mr. Williams' unprofessionalism, and waste this Court's time.  If

Mr. Williams directed even half the time he has wasted on such

---

was the Court that had raised the issue underlying the
Defendants' consolidation motion and, thus, there was a
reasonable basis for the Defendants to file their motion.  In any
event, the fact that Mr. Williams filed this motion two weeks
after the Court's decision demonstrates that he is capable of
acting in a timely manner, but apparently, only when it is
important to him.

shenanigans to focusing on the merits of this case, perhaps the case would have progressed beyond the beginning stages of discovery.  The complaint was filed back in January of 2008; yet one year and eight months later, Mr. Williams has still not turned over complete discovery responses.  This type of contemptuous dilatory behavior cannot go unpunished.

**(4) Bad Faith**

This factor addresses "whether the party's failure to comply with discovery obligations was willful or in bad faith." Bowers, 564 F.3d at 340 (internal quotation omitted).  Willfulness and bad faith involve "intentional or self-serving behavior"; thus, an attorney's negligent behavior – "even if inexcusable – will not suffice to establish willfulness or bad faith." Id. (internal quotations omitted).  Significantly, "'[i]n the jurisprudence of dismissal, willfulness or bad faith is almost always required in order for dismissal to be within the proper scope of the court's discretion.'"  Id. (quoting Estate of Spear v. C.I.R., 41 F.3d 103, 111 (3d Cir. 1994)).

Given the record as laid out above, there can be little doubt that at least some, if not all, of Mr. Williams' non-compliant behavior in this case was willful or in bad faith.  The sheer number of problematic instances supports this finding. Although he has always attempted to blame his failures to comply with deadlines and Court Orders on innocent misunderstandings or

36

unforeseeable circumstances, the Court does not find Mr.
Williams' excuses credible.  Over the course of this case, Mr.
Williams has attributed his failings to:  being out of town
and/or on vacation (Supp. Daitz Decl. [Dkt. No. 90] at ¶ 9;
Fourth Supp. Daitz Decl. [Dkt. No. 96] at ¶ 3; Williams Letter,
dated Sept. 15, 2009 [Dkt. No. 106]), getting lost (Third Supp.
Daitz Decl. [Dkt. No. 94] at ¶ 13), having a flat tire  (Third
Supp. Daitz Decl. [Dkt. No. 94] at ¶ 13), getting caught in
traffic due to road work (Third Supp. Daitz Decl. [Dkt. No. 94]
at ¶ 9), being unable to copy/bind his opposition papers due to
"inclimate [sic] weather" (Williams Letter, dated March 2, 2009
[Dkt. No. 53] at ¶ 4), and misunderstanding the Court's
undeniably clear Order regarding settlement memoranda (Hearing
Tr., June 29, 2009, at 2:23-7:15).  These implausible excuses
cannot mask what is ultimately dilatory and contumacious conduct.

   Moreover, his actions towards defense counsel have been
nothing short of obnoxious – he has repeatedly avoided their
calls and hung up on them (Supp. Daitz Decl. [Dkt. No. 90] at ¶
9; Second Supp. Daitz Decl. [Dkt. No. 92] at ¶ 6; Fourth Supp.
Daitz Decl. [Dkt. No. 96] at ¶¶ 2, 3; Fifth Supp. Daitz Decl.
[Dkt. No. 97] at ¶ 2), refused to communicate with them via email
(Ben-Dov Letter, dated Oct. 22, 2008 [Dkt. No. 19]), refused to
accept their discovery responses via FedEx despite his prior
acceptances of FedEx packages (Third. Supp. Daitz Decl. [Dkt. No.

94] at ¶ 15; Williams Letter, dated Aug. 12, 2009 (attached as
Ex. 36 to Ben-Dov Decl., dated Aug. 13, 2009) [Dkt. No. 84-38]),
refused to discuss discovery with them (Hearing Tr., Mar. 24,
2009, at 21:8-9), refused to tell them when he would serve
Plaintiff's discovery responses (Second Supp. Daitz Decl. [Dkt.
No. 92] at ¶ 3; Fourth Supp. Daitz Decl. [Dkt. No. 96] at ¶¶ 2-
5; Fifth Supp. Daitz Decl. [Dkt. No. 97] at ¶ 9), literally
withheld pertinent discovery from them until the conclusion of
Plaintiff's deposition (Fifth Supp. Daitz Decl. [Dkt. No. 97] at
¶ 12), threatened them (Second Supp. Daitz Decl. [Dkt. No. 92] at
¶ 5), and made inappropriate and offensive comments to them (see,
e.g., Pl. Letter, dated Nov. 5, 2008 [Dkt. No. 22]; Second Supp.
Daitz Decl. [Dkt. No. 92] at ¶ 8).  The Court finds the record is
replete with instances of Mr. Williams' bad faith and willful
misconduct.

### (5) Alternative Sanctions

Before imposing the ultimate sanction of dismissal, the
Court must consider the effectiveness of alternative sanctions.
As the Third Circuit has advised,

> [t]he most direct and therefore preferable sanction for
> the pattern of attorney delay ... would be to impose
> the excess costs caused by such conduct directly upon
> the attorney, with an order that such costs are not to
> be passed on to the client, directly or indirectly.
> This would avoid compelling an innocent party to bear
> the brunt of its counsel's dereliction.  Dismissal must
> be a sanction of last, not first, resort.

Poulis, 747 F.2d at 869 (emphasis added).

38

The Court cannot emphasize enough how egregiously unprofessional and intolerable Mr. Williams' conduct has been in this case. Time and time again, Mr. Williams has sought and been granted extensions. Nevertheless, he has continually failed to comply with Court-imposed deadlines and Orders. Although the Court has not imposed sanctions thus far, the Court has repeatedly warned Mr. Williams that his conduct in this case has been unacceptable and that he would be sanctioned if he did not improve it. Yet, despite having been warned and reprimanded on at least **TEN** separate occasions, he has persisted in this inexcusable behavior. Mr. Williams has left this Court with no alternative but to impose sanctions. A modest fine or exclusion of evidence amounts to a mere slap on the wrist in this case and that will not do. Rather, significant sanctions are in order – sanctions that will force Mr. Williams to realize the extent of his abysmal conduct and discipline him accordingly.

**(6) Meritoriousness of Claims**

The sixth Poulis factor the Court must consider is whether the Plaintiff's claims are meritorious. This does not require satisfaction of the summary judgment standard; rather, "a claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d at 869-70.

39

In this case, Defendants have moved to dismiss Plaintiff's post-employment claims in her Amended Complaint on grounds that Plaintiff lacks any evidentiary basis to support these claims. [Dkt. No. 104]. Plaintiff's response to this motion is due October 5, 2009. At this juncture, the Court is unable to say that Plaintiff's claims are not meritorious, given the standard recited above. Accordingly, this factor weighs against dismissing the case. However, the Court is mindful that "one Poulis factor is not controlling." Bedwell, 843 F.2d at 696.

## B.  Determination of Sanctions

Based on all the above analysis, it is apparent that although Plaintiff's and her counsel's misconduct in this case warrant dismissal, this Court's patience and generosity in previously refraining from sanctioning Mr. Williams prevent the Court from imposing the ultimate sanction of dismissal at this time, given the Third Circuit's mandate in Poulis. Although Plaintiff and Mr. Williams have repeatedly failed to comply with the scheduling orders, despite numerous extensions, disregarded the Federal Rules of Procedure and professional conduct, and ignored this Court's many warnings threatening sanctions, the Court did not impose sanctions up until this point. And although Mr. Williams' behavior in this case has demonstrated a complete lack of respect for this Court and the rules of procedure and

40

conduct, the Court continued to hold out hope that Mr. Williams would change his ways.  Perhaps this was foolish thinking.[10]

Thus, the Court is now in a position where, although it believes that dismissal is the appropriate sanction, the Court is restrained from dismissing the case due to the Court's own tolerance (and wishful thinking).  In an abundance of caution, and based on the case law in this Circuit, the Court will refrain from imposing the most severe sanction of dismissal at this point.  Instead, the Court will require Mr. Williams to pay

---

[10]   Mr. Williams has suffered the sanction of dismissal due to his misconduct in at least one prior case.  See Greene v. London Harness & Cable Corp., 2000 WL 1868380 (E.D. Pa. Dec. 21, 2000), reconsideration denied, 2001 WL 359838 (E.D. Pa. April 3, 2001).  Yet, apparently, dismissal was not enough to persuade Mr. Williams to change his method of practicing law.

In Greene, the district court dismissed the case as a sanction based on Mr. Williams' countless failures to comply with the court's orders.  The court found, inter alia, that "Williams has no regard for this Court and his conduct has been willful and in bad faith."  Id. at *3.  The court had attempted "warnings, reprimands and a monetary sanction [of $250]" and "yet, Williams [] failed to obey the simplest of th[e] Court's Orders."  Id. Accordingly, the court found that, "[a]s previous warnings and a monetary sanction have not appeared to have any effect upon Plaintiff or his counsel, the Court believes that the only appropriate sanction is dismissal of the case."  Id. at *4. Subsequently, the court denied reconsideration of its ruling, noting that "the Court hopes that Williams will use the dismissal of this case as a catalyst to review how he practices law." Greene, 2001 WL 359838 at *1.  Unfortunately, time has shown that the court's hope was in vain.

There is little doubt in this Court's mind that Mr. Williams must have endured sanctions in many other cases.  Yet, as demonstrated in the present matter, he persists in such inexcusable misconduct.  At this point, the Court is concerned that Mr. Williams' behavior has not only damaged his own reputation, but also tarnished the esteem of the entire legal profession.

Defendants' attorney's fees in connection with each and every motion Defendants were forced to file as well as each and every appearance Defendants were forced to make in response to his failures to comply with the Court's Orders.  See Fed. R. Civ. P. 16(f)(2) (providing that where a party or its attorney fails to comply with a scheduling order, "the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule...").  The Court finds that Mr. Williams' pattern of noncompliance, as set forth above, was not "substantially justified" and no "other circumstances make an award of expenses unjust" in this case.  Fed. R. Civ. P. 16(f)(2).  To the contrary, to require Defendants to bear the burden of Mr. Williams' misconduct would be patently unjust.

Although the record reflects that Plaintiff herself likely had some involvement in the discovery misconduct, the vast majority of failures in this case are more fairly attributable to Mr. Williams.  Thus, the Court finds it appropriate to impose the entire load of these sanctions on Mr. Williams **HIMSELF**.  Perhaps the burden of paying Defendants' attorney's fees will finally put an end to Mr. Williams' practice of flouting this Court's orders and help him internalize the consequences of flagrantly ignoring the rules of procedure as well as the rules of professional conduct.

## V.   CONCLUSION

Accordingly, by **October 23, 2009**, Defendants shall file with the Court a fee application listing all motions, letters, phone calls and appearances attributable to Mr. Williams' discovery misconduct and the fees and costs associated therewith (including the fees and costs of preparing their fee application).  Upon Court approval, Mr. Williams shall be responsible for paying these fees and costs within a reasonable amount of time.

Moreover, the Court will require Plaintiff to produce all outstanding discovery responses, as set forth <u>supra</u> on page 33 and any other discovery not listed but not produced, by **October 23, 2009**.  This will be the **FINAL** extension of discovery in this case.[11]  In other words, **NO FURTHER EXTENSIONS FOR DISCOVERY WILL BE GRANTED FOR ANY REASON WHATSOEVER**.  The Court will hold a status conference on **October 26, 2009, at 1:30 P.M.** to ensure that Plaintiff and her counsel have complied with this Opinion and provided all discovery responses as requested by Defendants. In the event Plaintiff fails to do so, this Court will not hesitate to dismiss the case.  To be clear, the Court will repeat itself:  this is the **FINAL** warning the Court will issue to Plaintiff and her counsel; **FAILURE TO HEED THE COURT'S FINAL**

---

[11]   In the event Defendants seek to further depose Plaintiff based upon receipt of late discovery, the Court will permit the deposition to occur.  The Court will address the terms of such deposition at a later date.

**WARNING WILL RESULT IN DISMISSAL OF THE CASE.**

Finally, Mr. Williams shall be required to provide a copy of this Opinion as well as the accompanying Order to his client, Ms. Grant.  **Mr. Williams shall file the following certifications with the Court no later than October 23, 2009:  1) a certification signed by Mr. Williams stating that he has given Ms. Grant a copy of this Opinion and the accompanying Order, and 2) a certification signed by Ms. Grant stating that she has received a copy of this Opinion and the accompanying Order.**

An appropriate Order encompassing all of the above requirements shall issue this date.


Dated:  September 24, 2009      s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE